judges of the United States Court of Appeals for the Tenth Circuit. The next case for argument this morning is 19-1268, United States v. Romero-Lopez. Counsel? Counsel, we're ready to hear you. Please pause between sentences. Okay. Thanks. Good morning. My name is Meredith Esser and I'm arguing this case on behalf of Mr. Romero-Lopez. This case involves the question of what date Mr. Romero-Lopez was found in the United States in the context of an illegal reentry charge. The date here is significant because the found date directly determines which guideline manual should have applied at sentencing and consequently which guideline range applied for ex post facto purposes. Counsel, under what standard of review do we review Judge Babcock's acceptance of the stipulation? I think it's a complex question because it's difficult to know how to actually characterize his ruling. I think that it would be reviewed under the clear error standard if the question is, was his ruling a determination that this was a judicial admission? I've argued that this should be decided under the plain error standard and framed it as a question of whether Mr. Romero-Lopez, whether his stipulation was knowing and voluntary. But I think under either standard, it was clearly erroneous for the district court to characterize his plea, to characterize his statement at the end of the change of plea hearing as an admission. I don't know if that answers the question. Either standard, clear error. What's the other? Plain error. So I think it would also be plain error to characterize it as an admission or plain error for the district court. Under the plain error standard, I argued that his admission... Was there any objection to his finding at the point at which it was made? No. And that's why I characterized it as a plain error issue. So there was no contemporaneous objection at the time of the change of plea hearing. I understand that, but I'm just saying that if it had been objected to, would then our standard review then be abuse of discretion or still plain error or clear error? I think it would be clear error. I don't know, but I think it would be clear error. But I think under any of the standards, it's pretty clear from the context in which the plea was taken that nobody in the courtroom believed he was stipulating to this date. First of all, the plea agreement, which was submitted to the court well before this hearing, contemplated the party's dispute over the guideline range. Both versions of the guidelines were set forth in detail in the plea agreement. At the beginning of the change of plea hearing, defense counsel explained the dispute over the date and specifically said that defense counsel would be arguing that the earlier date applied. And at the change of plea hearing, it's clear that the court understood that there was a dispute over this because the court instructed the parties to brief the issue. At the beginning of the change of plea hearing, the charge is read to the defendant without that date. And it's only at the very end of the hearing, after all of these other proceedings had occurred, that the indictment was read to him with that date. And the way that I look at the record, it was just sort of a mistake and nobody caught it. And then in the sentencing briefing and at sentencing, the district court characterized it as a judicial admission. Another point that I would make about the plea agreement is that there's some discussion about this word encountered, which was set forth in the stipulation of facts. And our position is that the word encountered was likely deliberately used in the stipulation of facts as in contrast to the word found because the word encountered is not a legal term of art in this context. And so the district court's characterization as that, also as a stipulation to this particular date, our position is that it's not a stipulation in the way that the court characterized it and the way that the government is characterizing it. In the plea agreement, but in the indictment, it wasn't interpreted in Spanish, and it wasn't the verb encontrar, the verb was found, right? So at the end of the change of plea hearing, which I think is the sort of operative, it's sort of the crux of where this controversy emerged from. Yes, the district court read the indictment aloud to the defendant and that date was read aloud to him. But like I said, I think given the context in which that happened, I think it was just a mistake. Everyone missed it. And I don't think that that admission was knowing involuntary to the extent that it had such a significant impact on his guideline range. In 2016, he was arrested for driving while impaired, correct? Yes. So I take it there's no quarrel whatsoever about what happened on that date. And in 2017, he was arrested on an outstanding warrant, correct? Yes. It's not like we don't have an exemplary chap here, but nevertheless, these are the facts. And then on 2018, what happened? He was arrested for manufacturing controlled substance on that date. And that's the date that I think everyone agrees. I don't think there's any dispute that he was encountered by ICE on the latest date. I think the date that's in dispute is this July 11, 2016 date. Or 2017, right? Because one of the disputes that have arisen was the judge's somewhat confusing language. And I agree it was a little bit confusing when he said that arguably he could have been found in 2017 after he had already found that there was a stipulation through the guilty plea. So at least for me, I wouldn't so readily discount the applicability potentially of the 2017 date. But that puts it into the higher guideline. And that's why I directed that to the defendant rather than the government. Yes. I agree that it seems as though he was also that the legal definition of being found was likely satisfied in the 2017 date. But as Judge Kelly points out, that doesn't really help Mr. Romero-Lopez in terms of the guideline range. And I think there's... No, it may preclude you from prevailing at prong three of plain error. In other words, let's say hypothetically we agree with you that the defendant... That the district court mistakenly found a stipulation in light of what was preceding... Preceded the announcement of the guilty plea at the change of plea hearing. Well, in light of what the judge said about 2018 or potentially 2017, how can you prevail at prong three if the district court had given some indication that he found that it was either 2018 or 2017? I think the question is, did he make sufficient findings about the earliest date? I think I understand your question, but I think that all the parties were... The 2017 date to me in terms of the briefing and all of that was a little bit of a... I don't want to say an afterthought because obviously it's a significant part of the facts. But it's not consequential to the extent that it doesn't affect the guidelines. And I don't think that the district court made sufficient findings as to the first date. And the first date was the one... I mean, if you're talking about... Let me back up. So this is an ex post facto issue. And under this court's case law, the offense of illegal reentry ends on the date that the person is found. And so if the person is found or if Mr. Romero Lopez was found on July 11th, 2016, that's when the offense ends. And that's the operative date for ex post facto. And so he could have also been technically found on the later two dates. But for an ex post facto inquiry, it's essential to determine whether he was actually found on that first date. What is the evidence, whether the appropriate agency knew of or should have known of his DWI issue? He was not fingerprinted. Apparently he was not given any kind of a sentence. And was there any evidence at all in this record that anything was done to him that would have alerted the immigration people to his presence? And I think that's the central question. And I think that's the question that the district court needed to answer and didn't. But I will say that Mr. Romero. He did answer it because he found a different date with an alternative, still another different date. In other words, he ruled it out. He knew the issue. But the reason that he ruled it out was because he characterized the plea as a judicial admission. He didn't rule it out because of any fact finding. And that's the problem. There was no fact finding done as to the earliest date. And as I just said, for an ex post facto violation, the fact finding is required. I mean, this is a constitutional question. And this court's case law says that a prior deportee is found when through the exercise of reasonable diligence typical of law enforcement, that he is a prior deportee, that he is illegally present in the United States, and his whereabouts. And based on all of the other information that he gave to law enforcement on that date, our position is that the government could have found him. He gave his true name, his true date of birth. He didn't give an alias. He gave his address where he was living in Thornton, Colorado. He gave a Mexican ID card. It looks like from the documents that he had an FBI number, and that seems consistent with his prior convictions, which included illegal reentry convictions. So he would have obviously have been known to the FBI at some point.  The fingerprint issue I think was focused on in the district court because fingerprints seem to be sufficient to determine this question. But I don't think that they're necessary. I think that the question can be answered through other facts, facts that we have here. And the problem is that no factual finding was made. And so the district court didn't really weigh any of the other surrounding pieces of information that Mr. Romero-Lopez did give. I would like to reserve some time for rebuttal, please. All right. May it please the court. I'm Marissa Miller, and I represent the United States. The court should affirm the decision below because the defendant can't satisfy either the second or third prong of the plain error test. At this point, I think it's obvious that the defendant and the government disagree about what exactly the defendant stipulated or admitted to, and whether it was proper for the district court to hold him to those admissions. But at the end of the day, the district court's actions here are reviewed for plain error. And that's because the defendant didn't object or even respond when the government made these arguments below or when the district court accepted them. So when we do this – I agree that we have to review for plain error. But if you look at it from the standpoint of if proper objection had been made, and it wasn't, and we take that as the error, then the question would be, was the finding that the district judge made either clearly erroneous? Was it – did we review it for abuse of discretion? Do you have a view on the standard of review on that point? Sure. So I guess just putting aside the – if I guess in the universe where – Assuming objection, what would the standard of error be? Exactly. So I hadn't thought about this, but I think because our position is that the district court reached this alternative holding, the first of which is – so the district court based its ruling on two things. One was the defendant's admissions and stipulations. And the other, in our view, was that the district court made an alternative finding, that ICE didn't receive electronic notification about the defendant until 2017. So I think that first conclusion could arguably be a legal conclusion, although I think perhaps the question of whether something is an admission is maybe a mixed question. So that could be de novo. But I think the alternate holding that the court reached where it, I think, decided the factual dispute here would be reviewed for clear error. All right. I'm not sure how helpful that was. But I would like to actually just start with the third prong of plain error because I believe that that's fatal to the defendant's claim. As this court knows, the third prong requires the defendant to show a substantial probability that the outcome below would have been different. And I think even if we put aside the question of the defendant's guilty plea and his plea agreement, all of the evidence in the record we have supports the government's position that ICE wasn't notified about the defendant until May 2017 at the very earliest. At the same time, there's essentially no evidence in the record to support the defendant's position that he was fingerprinted during his 2016 arrest or, importantly, that those fingerprints were sent to ICE. And I also think it's important to recognize, as I just argued, that the district court did resolve this question. And there is some confusing language in the court's decision. But when he says there are two reasons that I'm denying this objection, I think that that second reason represents the court's finding that ICE didn't receive any kind of electronic notification about the defendant until May 2017 rather than during his 2016 arrest as he tries to argue. Well, Lopez has consistently argued that he was found in 2016, correct? Yes, Your Honor. I think that that is correct. So he would not kind of voluntarily have, quote, stipulated, end quote, that he was found in 2018 because, obviously, that would eviscerate his argument. Yes, Your Honor. So given that, didn't district court essentially find that he stipulated to the fact that he was found in 2018? Is that what the district court did? I think that is a correct assessment of what the district court did. Wouldn't that be clear error? Because the defendant obviously would not have said, I was found in 2016, I was found in 2016, I was found in 2016, oh, and by the way, I stipulate that I was found in 2018. That, it seems to me, doesn't square. Sure. So I think that, I think this really just goes, again, as you pointed out, to the second prong of plain error. And I think we can all agree that the law in the 10th Circuit is that a guilty plea has to be knowing and voluntary. Also go to the third prong as to whether the result would have been different. It's difficult for me to see how the result would have been different because even if we accept what the defendant is saying is true and saying this is an error, because of the evidence in the record, as well as this alternative holding by the district court saying, you know what, even putting aside all the admissions, I'm going to find 2017 and not 2016, I think that there's no way that the outcome could have been different. But I do think there is a real question here as to whether this error could even be clear or obvious. And the reason for that is because looking at the case law in the 10th Circuit, we know that these guilty pleas have to be knowing and voluntary. And I think everyone agrees that the guilty plea in the sense that the defendant understood that he was giving up his right to trial was knowing and voluntary. But I think it's an open question whether factual stipulations or admissions like this have to be knowing and voluntary. And what I mean there is that I think the question of what it means to be knowing is a really open one. Did the defendant understand when he signed this plea agreement that he was agreeing that ICE had apprehended him in January 3, 2018? Yes. I think in most cases that is what we mean when we say a factual stipulation is knowing. The defendant has the competency to understand what he did. Was it knowing in the sense that the defendant believed or understood that he was conceding this argument about the founding date? You know, I would say no. But the thing is, if we look at the 10th Circuit case law, there's simply, you know, neither party has found any decision with some sort of analogous situation where it tells us that that's incorrect. And at the same time, we have these decisions in Rosales-Garray and Morrison where this court has essentially said, well, when a defendant pleads guilty to an indictment that specifies this date and then later tries to challenge that date, it doesn't matter because by pleading guilty to an indictment with this date in it, that's essentially dispositive of this issue. So we can understand, you know, at the very least, while recognizing that perhaps what went on here may have been problematic, it's a gray area and we are on the plain error standard review. And so would the district court have sua sponte recognized that this was problematic without even an objection or any kind of argument from the defendant? For me, I think that answer has to be no. And so the error can't be clear, obvious, unless we can find some case that tells us that holding a defendant to the language of the indictment that he pled guilty to, to his statements in open court, and to some of the statements in the plea agreement that effectively concede this issue is problematic. And we don't have that here. Ms. Bitter, let me ask you, before you were elaborating on prong two, you were commenting on prong three with regard to the alternative holding. Can I ask you what this sentence means from the district court that enunciated that alternative holding? The fallback date relied upon by the government of May 27 can't arguably apply because he was identified and was notified electronically of his Adams County location and arrest. What does that sentence mean? Your Honor, that's me flipping, but I really wish I knew. Well, but if we don't know, how can we say that there was an alternative holding that he applied on the 2017 date? I think that if you look at the broader context of that statement, the fact that the court is saying, I'm giving two reasons for denying this objection, here's reason one and here's reason two, that is strong support. I spoke to trial counsel about it. His best guess was that it was an error in the transcript. But I have some additional evidence to support this idea for the court. And I apologize because it wasn't in the brief. But later in the sentencing proceedings, the district court actually relies on that May 2017 date specifically to calculate the defendant's sentence because one of the other objections was, was the defendant under a criminal justice sentence at the time he committed this offense? And at page 15 of volume three, we see that the court actually relies on the May 2017 date to determine the answer to that question. And I think that essentially is conclusive evidence that what the court was trying to say was, one reason for my ruling is the admissions, but even if not, I'm making a factual determination here that 2017 and not 2016 was the correct date. Your hypothesis, I assume, is that the transcription error is that can't should have been can't. Yes. Excuse me, counsel, but may I read the precise words of the court? The court said after he talked about the May 27 date and saying it can't arguably apply, he says so either the notification to ICE or the actual physical encounter on January 3rd, 2018, together with the admission of the guilty plea, convinces me that the defense's argument must fail. So it seemed to me that the district court clearly did not rely on 2017, but relied instead on 2018 based on the admission. I guess what you're asking us, what you're saying to Judge Bachrach is, well, that had to be error. I talked to the government counsel on the case that guy tried this and said it must be error. You're asking us to cut you a break on that error, but not to cut the defendant a break on his error. So, I mean, that can't wash. So, Your Honor, I actually, I read that sentence very differently. I think when the court says so either that notification, the court is referring to the 2017 notification to ICE because that's what we were debating, whether ICE was notified in 2017 or 2016. So that statement follows this paragraph where he's discussing the 2017 notification to ICE. And he says so either that notification or the actual encounter in 2018 convinces me that the defendant's argument has to fail. So, I read that. He didn't say to either that notification. He says so either the notification to ICE or the actual encounter on January 3rd, 2018, together with the admission on the guilty plea, convinces me. So, I agree with you that we're reading it very differently. I guess my response is if your argument were right, the word would be that, not the. I guess my response to that would be, I don't think that was ever discussed whether ICE was notified in 2018. ICE was notified. The government's argument has always been that ICE was notified in 2017. That was when the fingerprints hit. So, I'm not sure that that language could refer to this idea of ICE being notified in 2018. And then I think also when we look again at page 15 of that transcript, the fact the district court is relying on the May 2017 date to calculate the defendant's sentence tells us that that is the date that the court accepted as the earliest date. But while I understand your concern about giving us the benefit of the doubt and not them, however, I do think that ultimately this case, even if we accept that there was an error, even if we put aside whether the district court came to this alternative holding, there's simply no way for the defendant to show that the outcome here would have been different because there is no evidence in the record that ICE had any idea about the defendant until May 2017. So, should we remand so that the district court could make findings on this? I would argue that that's unnecessary based on the record. However, if the court disagrees with the government, then that would be our second best outcome. If the court has no further questions, I will cede the remainder of my time. Colleagues, either of you have questions? No, thank you. All right. We accept your concession of time. Thank you. Your concession of time. Thank you. I have three quick points. The first is on this issue of plainness. I think that this case, United States v. Livingston, which was cited in the briefs, does show that stipulations need to be knowing and voluntary. It says a party must enter into a stipulation freely and voluntarily. In that case, there was some question about whether Mr. Livingston had waived certain constitutional rights based on stipulations. It's not exactly on point, but I think the language is pretty clear that in the Tenth Circuit it's plain that even stipulations that have consequences to a defendant's outcome need to be knowing and voluntary. In terms of the record issues, I think our position is that this is an ex post facto error. This is a constitutional question, and I think that there are some questions about what the district court did. Our position is that he relied solely on the admission in rejecting the earlier date, and as I explained before, because this is an ex post facto violation, there needs to be a real finding as to that earlier date because it basically doubles Mr. Romero-Lopez's guideline range. And with respect to the third prong, the government has said, you know, ICE, there's nothing in the record that says that ICE was actually notified about Mr. Romero-Lopez's presence, but that's not what this court requires. This court requires that the government could have found him with the exercise of reasonable diligence. Well, if he had not been, and I realize there's a competing or contrary proffers about whether he was fingerprinted, but if we say, well, the defendant has the burden at prong three, and it's a swearing match through competing proffers, so we can't assume that he was fingerprinted. How should we assume that the federal government would have known in the absence of him being fingerprinted in 2016? How can you show that the federal government, DHS, would have been able to have found him in 2016? I mean, I think because of all of the things that I mentioned before, he gave his true name. He didn't give an alias. He gave his date of birth. He gave his Mexican ID card. He was very candid with the officers. I think it's pretty clear that he had an FBI number. There was probably some sort of NCIC check, and this is in contrast to the case, the VRL versus Ortiz, where they said that the defendant in that case, or actually I think it was an earlier case that they were citing, gave an alias, so that means he wasn't found, but here Mr. Romero Lopez was very candid with the officers. I see that my time is up, and if the court has no further questions, I ask that the court vacate the sentence and remand so that the district court can make the proper findings in this case. Well, let's just... Judge Backrek was questioning you. Bob, any further questions? Oh, no, no. No, thank you, Judge Lucero.